**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **ROBERT WINDSOR, JR.,** *et al.*, | * | |
| **Plaintiffs** | * | |
| **v.** | * | **CIVIL NO.  JKB-10-114** |
| **SPINNER INDUSTRY CO., LTD.,** *et al.*, | * | |
| **Defendants** | * | |
| | * | |

*     *     *     *     *     *     *     *     *     *     *     *

**<u>MEMORANDUM</u>**

Robert Windsor Jr., Diana Windsor, and Tyler Windsor (a minor child, by and through his parents and next friends, Robert and Diana Windsor) ("Plaintiffs") brought this suit against Spinner Industry Co. Ltd., Raleigh America, Inc., Dick's Sporting Goods, Inc., J & B Importers, Inc., and Joy Industrial Co., Ltd. ("Defendants") for alleged breach of contract, negligence, products liability, and breach of warranty.  Defendant Joy Industrial Co. now moves to dismiss all claims against it for lack of personal jurisdiction.   For the reasons explained below, Defendant's Motion to Dismiss (ECF No. 47) is HELD IN ABEYANCE and an evidentiary hearing is scheduled with regard to Defendant's contacts with this forum.

**I.     BACKGROUND**

This products liability case arises from an accident in which the front wheel of Robert Windsor's bicycle dislodged, causing him and his toddler son, Tyler, to be thrown to the ground. Plaintiffs allege that each of the Defendants was involved in the design, manufacture, or assembly of the bicycle or its components, and that defects in these processes were the proximate

cause of the accident.  In this motion, Defendant Joy Industrial Co. ("Joy") moves to dismiss all claims against it[1] on the grounds that it is not subject to personal jurisdiction in this forum.

Joy is a Taiwanese corporation that designs and manufactures bicycle components, including a mechanism called a "quick release skewer," which is used to hold wheels in place. Plaintiffs allege that their bicycle contained one of Joy's quick release skewers and that a defect in the skewer contributed to the cause of their accident.  The parties agree that Joy sells its products to distributors, manufacturers, and trading companies who then market them in every state in the U.S., but that Joy has no direct contacts with the State of Maryland.  Plaintiffs contend that the nationwide marketing of Joy's products by intermediaries creates sufficient *minimum contacts* between Joy and Maryland to subject Joy to specific jurisdiction here.  Joy contends that it does not.

## II.   LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows defendants to challenge a district court's personal jurisdiction over them before filing any responsive pleadings.  When a defendant so challenges, the plaintiff bears the burden of proving the existence of personal jurisdiction by a preponderance of the evidence.  *Combs v. Bakker*, 866 F.2d 673, 676 (4th Cir. 1989).

## III.   ANALYSIS

### A.  Personal Jurisdiction: State of the Law

The Due Process Clause of the Fourteenth Amendment "sets the outer boundaries" of state judicial authority.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853 (2011).   Consistent with due process, a state may authorize its courts to exercise

---

[1] In addition to Plaintiffs' products liability claims, Defendants Dick's Sporting Goods, Raleigh America, and J & B Importers have filed crossclaims against one another and all other defendants, including Joy.  (ECF Nos. 25, 32, 79).

jurisdiction over non-resident defendants only to the extent that the defendants have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Such contacts, if they exist, can give rise to one of two species of personal jurisdiction: general or specific.  General jurisdiction exists where a non-resident maintains "continuous and systematic" contacts with the forum State. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  Under these conditions, courts of the forum State may exercise jurisdiction over the defendant in any suit properly before them, even if the subject matter is completely unrelated to the defendant's activities in the forum. *Id* at 415 n.9.  On the other hand, specific jurisdiction arises where a non-resident lacks continuous and systematic contacts with the forum, but has nonetheless "purposefully avail[ed] itself of the privilege of conducting activities within the forum State" and thereby "invoke[ed] the benefits and protections of its laws." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Under these circumstances, courts of the forum State may exercise jurisdiction over the defendant only with respect to claims that arise out of the defendant's activities in the forum. *Helicopteros*, 466 U.S. at 414 n.8.

The issue presented in this motion is the extent to which a state may exercise specific jurisdiction over a non-resident manufacturer whose only connection to the forum is that its products are sold there by third-party distributors.  Although the idea that jurisdiction automatically "travel[s] with the chattels" has long been rejected, *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2793 (2011)("*McIntyre*"), the Supreme Court has at times endorsed a so-called "stream of commerce" doctrine, holding that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that

delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).   Divining the precise contours of the doctrine, however, has confounded and divided state and federal courts, including the Supreme Court itself, for many years.   *See generally Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987); *McIntyre*, 131 S.Ct. 2780.   In its leading case on the issue, *Asahi*, the Supreme Court issued three opinions, none of which garnered a majority.   Two of those opinions, by Justices O'Connor and Brennan, have come to define the basic opposing sides in the ongoing debate over this problem.   Justice Brennan's opinion espouses a broad view of jurisdiction in which a defendant purposefully avails himself of the privilege of doing business in the forum State whenever it is aware, or could have foreseen, that its product would ultimately be sold there. *Asahi*, 480 U.S. at 116-121 (Opinion of Brennan, J.).   Justice O'Connor's opinion, in contrast, espouses a restrictive view that rejects foreseeability as a standard and instead requires that a defendant take some deliberate and overt action to target the markets of the forum State in particular.   *Id* at 108-13 (Opinion of O'Connor, J.).

In view of the Supreme Court's ambiguous guidance in *Asahi*, this Court would ordinarily look to subsequent decisions of the Fourth Circuit for direction in interpreting and applying *Asahi's* holding in this case.   However, in June of 2011, the Supreme Court took up the question again in the *McIntyre* case.   The Fourth Circuit has not yet had the opportunity to rule on what impact, if any, *McIntyre* has on its understanding of personal jurisdiction, and the Court is therefore obliged to begin its inquiry in this case with its own analysis of that decision.

The facts of the case were these.   J. McIntyre Machinery, Ltd. was a British corporation, operating in the U.K., that manufactured metal shearing machines used in the recycling of scrap

metal.  The record indicated that McIntyre sold some of its machines to a U.S. distributor, and that between one and four of the machines made their way to the State of New Jersey.  One of the machines was purchased by a metal recycling plant where it later severed four fingers from the hand of a worker, Robert Nicastro.  Nicastro sued McIntyre in New Jersey state court.  On appeal the New Jersey Supreme Court, relying in part on the U.S. Supreme Court's decision in *Asahi*, ruled that state courts may exercise jurisdiction over a foreign manufacturer if the manufacturer "knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states."  *Nicastro v. McIntyre Machinery America, Ltd.*, 201 N.J. 48, 76-77, 987 A.2d 575, 591-92 (2010).   Applying that standard, the court held that McIntyre was subject to personal jurisdiction in New Jersey because its distributor attempted to market its machines nationwide. *Id*.

Although the Supreme Court granted *certiorari* with the hope of dispelling the confusion created by *Asahi*, it again proved unable to reach a majority decision as to the correct legal standard.  Instead, it reversed the New Jersey Supreme Court by plurality and issued three opinions, dividing along almost precisely the same lines as the three opinions in *Asahi*.  Justice Kennedy announced the judgment of the Court and delivered a plurality opinion, joined by Chief Justice Roberts and Justices Scalia and Thomas, articulating a restrictive view of jurisdiction based on the limits of state authority.  131 S.Ct. at 2786-91.  Justice Kennedy's opinion flatly rejected the foreseeability standard articulated by the New Jersey Supreme Court, explaining that the federal law of personal jurisdiction, rooted in the Due Process Clause of the Fourteenth Amendment, is fundamentally concerned with ensuring that states exercise their judicial power within the lawful limits of their authority as sovereigns, and not with "freeform notions of…

5

fairness."  Ordinarily, states may exercise jurisdiction over non-residents only by their consent. The "purposeful availment" standard, Kennedy explained, is a means of testing whether such consent can be inferred from the defendant's conduct.

Justice Kennedy further explained that the confusion in doctrine that led the New Jersey Supreme Court to err arose because of the vagueness of the term "stream of commerce" used in *Asahi*.  The proper reading of that case, Kennedy wrote, was simply that, in some circumstances, a non-resident defendant may evince an intent to avail itself of the laws of a forum State by selling goods *outside* the forum with the expectation that others will sell them *inside* the forum. *Id*.  However, he said, that intent is generally only evinced when the defendant specifically targets the forum state.  *Id*.  The fact that it knows or should know that its product may end up in the forum is not enough.  *Id*.  Kennedy concluded that although the record indicated that McIntyre sought to serve a U.S. Market, it did nothing to target New Jersey in particular, and jurisdiction was therefore lacking.

Justice Ginsburg, joined by Justices Sotomayor and Kagan, issued a dissenting opinion embracing foreseeability as the standard of personal jurisdiction.  *Id* at 2794-2804.  According to them, the "modern approach to jurisdiction over corporations and other legal entities, ushered in by *International Shoe*, gave prime place to reason and fairness."  The concepts of "consent" and "corporate presence," they wrote, were legal fictions that ought to be discarded.  Furthermore, the "purposeful availment" standard was intended only to avoid hailing a defendant into court based on random or fortuitous contacts.  This objective is met, they wrote, when a foreign company engages an American distributor to sell its products throughout the U.S., even if it sells them to no state in particular.  Furthermore, they maintained that it was fair and reasonable to make McIntyre answer in the forum were its products caused injury.  From its point of view,

they speculated, the distinction between individual states within the U.S. was irrelevant to its business, and the burden on it of litigation in New Jersey would be less than the burden on Nicastro of litigating in the U.K.

The deciding votes were cast by Justices Breyer and Alito, who concurred in the judgment reversing the New Jersey Supreme Court.  In his concurring opinion, Justice Breyer rejected what he viewed as new rules announced by both the plurality and the dissent.  *Id* at 2791-94.  He expressly rejected the notion that a non-resident defendant could be subjected to suit in a state based solely on foreseeability, agreeing with the plurality that personal jurisdiction required purposeful availment of a particular forum.  However, he also rejected what he described as the plurality's "strict no jurisdiction rule."  He explained that the standard of purposeful availment, while the correct legal standard, may require further explication in the context of global commerce, but that the facts of the case did not present an adequate vehicle for crafting any new rules.  Instead, he found that the case could be easily decided by existing precedent because the record indicated neither a regular flow of the defendant's products into New Jersey nor any effort on its part to serve the New Jersey market in particular.

Because *McIntyre* was decided by plurality, this Court must construe the holding as "that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976)).  Furthermore, under Fourth Circuit case law even the narrowest grounds of the decision should only be given precedential weight if there is substantial overlap between the plurality and concurring opinions, such that "the narrowest opinion represents a common denominator of the Court's reasoning and embod[ies] a position implicitly approved by at least five Justices who support the judgment." *A.T. Massey Coal Co. v. Massanari*, 305 F.3d 226, 236

(4th Cir. 2002)(quoting *Association of Bituminous Contractors, Inc. v. Apfel*, 156 F.3d 1246, 1254 (D.C. Cir. 1998)(internal quotation marks and citation omitted)).   Applying this standard, the Court construes *McIntyre* as follows.

First, *McIntyre* clearly rejects foreseeability as the standard for personal jurisdiction. Although the concurrence and the plurality differ as to what might constitute "purposeful availment" in the context of national or global marketing, they both firmly embrace the continuing significance of individual state sovereignty and, on that basis, hold that specific jurisdiction must arise from a defendant's deliberate connection with the forum state.   That holding now commands the assent of six Justices of the Supreme Court, all on substantially the same grounds, and is therefore binding precedent.

Beyond this, however, *McIntyre* merely affirms the status quo.   Justice Breyer expressly states that his opinion is based solely on the Court's precedents and that he does not announce any new rule.   Although he rejects what he views as the plurality's "strict no jurisdiction rule" and suggests that the Court may have to modify its approach to jurisdiction to adapt to new forms of commerce that defy traditional categories,[2] that is not the basis for his concurrence in the judgment and thus is not part of the "narrowest grounds" of the Court's decision.

This Court therefore construes *McIntyre* as rejecting the foreseeability standard of personal jurisdiction, but otherwise leaving the legal landscape untouched.   The Court will therefore return to this circuit's post-*Asahi* precedents to resolve this case.   In the years following *Asahi*, the Fourth Circuit substantially adopted the O'Connor understanding of Due Process and

---

[2] "The plurality seems to state strict rules that limit jurisdiction where a defendant does not 'inten[d] to submit to the power of a sovereign" and cannot "be said to have targeted the forum.' *Ante*, at 2788. But what do those standards mean when a company targets the world by selling products from its Web site? And does it matter if, instead of shipping the products directly, a company consigns the products through an intermediary (say, Amazon.com) who then receives and fulfills the orders? And what if the company markets its products through popup advertisements that it knows will be viewed in a forum? Those issues have serious commercial consequences but are totally absent in this case." *Id* at 2793.

articulated its own formulation of the test for minimum contacts: "whether… the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994). In adopting this standard, the Fourth Circuit specifically rejected the notion that a state could assert jurisdiction over a defendant "whose product is sold in the state simply because [it] must expect that to happen." *Id* at 946. Further, the Fourth Circuit implicitly adopted Justice O'Connor's list of "additional conduct" that might serve as evidence of purposeful availment. *See St. Jarre v. Heidelberger Druckmaschinen, A.G.*, 19 F.3d 1430 (Table) at *3 (4th Cir. 1994)(citing *Asahi*, 480 U.S. at 112, (opinion of O'Connor, J.))(unpublished). With this standard in mind, the Court now turns to its analysis of Joy's contacts with this forum.

**B.     Joy's Contacts with Maryland**

Plaintiffs allege that Joy is subject to personal jurisdiction in Maryland based on the following factual allegations:

> … Joy makes direct sales to companies in the United States, nearly all of which maintain a web presence in Maryland and which sell their products, either through online sales or through distributors (or both), throughout the United States and specifically in Maryland. Joy further engages with trade companies who then market its products for sale throughout the United States and in Maryland. Finally, Joy sells its products directly to manufacturers who are widely known to distribute their products for purchase at countless retailers across the United States, and in Maryland specifically, or otherwise directly through their websites to anywhere in the country, including Maryland. The sale of the quick release skewer, which Joy had knowledge was substantially likely to be implemented on products that would be sold in Maryland, is directly related to the bicycle accident which is the subject matter of this litigation.

(Pl.'s Opp. 7). Even if proven, these facts are insufficient to demonstrate jurisdiction over Joy. First, although Plaintiffs make much of the internet marketing of Joy's products, the web presence of Joy or its distributors in Maryland is immaterial because Plaintiffs did not purchase

their bicycle on the internet.  Further, Plaintiffs have offered no details about the particular chain of distribution that brought the allegedly defective skewer to Raleigh and then to Dick's Sporting Goods.  Finally, Plaintiffs have made no showing of any "additional conduct" that would evince an intent to serve the Maryland bicycle market in particular.  Instead, Plaintiffs devote nearly their entire brief to describing the conduct of third-party distributors and manufacturers, who have no connection whatever to this case, apparently believing that those parties' contacts with Maryland can be attributed, vicariously, to Joy.  These arguments entirely miss the substance of the jurisdictional inquiry, which is "whether, focusing upon the relationship between '*the defendant*, the *forum,* and the *litigation*,' it is fair, in light of *the defendant's contacts* with that forum, to subject the defendant to suit there." *McIntyre*, 131 S.Ct. at 2793 (Opinion of Kennedy, J.)(quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)) (some emphasis added).  At best, Plaintiffs' theory of jurisdiction, as presented thus far, amounts to no more than the "knew or should have known" standard that the Supreme Court explicitly rejected in *McIntyre*.

One of Plaintiff's arguments, however, warrants further scrutiny, because it has recently been endorsed by a judge in this district.  That argument is that jurisdiction is proper because certain of the manufacturers and distributors to whom Joy sells its products not only market their products in Maryland, but maintain established channels of distribution here, suggesting (although Plaintiffs do not specifically allege) a regular course of sales.  A judge in this district has recently held that where a foreign manufacturer sells its products to large national retail chains that have an established and ongoing presence in every state in the U.S., such a relationship evinces more than the mere foreseeability, but an actual intent to serve the forum market, and hence purposeful availment.  *Kernius v. International Electronics, Inc.*, 433

F.Supp.2d 621 (D. Md. 2006)[3] ("defendant purposefully directed its activities at Maryland residents by placing [its product] in the stream of commerce through established distribution channels," i.e. "national retailers such as RadioShack, Best Buy, Target, and Wal-Mart.").  With the greatest respect, however, this Court finds this line of reasoning indistinguishable from the statement in *World-Wide Volkswagen* that jurisdiction lies in a forum when a defendant places its product in the stream of commerce "with the expectation" that it will be sold there.[4]  444 U.S. at 298.  The Fourth Circuit has unambiguously held that some forum-specific conduct *in addition* to this expectation is required to create minimum contacts.  *Lesnick*, 35 F.3d at 946 (finding no purposeful availment where manufacturer of cigarette filters sold products to cigarette maker whom it knew would sell cigarettes in Maryland).  Although the Court believes that the *Kernius* line of reasoning, and indeed the reasoning of the dissenters in *McIntyre*, represents the most sensible approach to personal jurisdiction in the context of global commerce, it nevertheless finds that that approach is clearly foreclosed by the precedents of the Supreme Court and of this Circuit.

Although the Court finds that Plaintiffs have not made a *prima facie* case of personal jurisdiction against Joy, the Court is reluctant to rule on the parties' written submissions alone in view of the uncertainty created by *McIntyre* with regard to the correct legal standard.  Now that the Court has clarified that standard, it will grant the parties' request for a hearing on this matter where they may present any evidence they may have with regard to "additional conduct" by Joy directed at the State of Maryland.

---

[3] Plaintiffs cite the case of *Jones v. Boto Co., Ltd.*, 498 F.Supp.2d 822 (E.D. Va. 2007) for this exact position, but the finding of jurisdiction in that case was actually based on the combination of the foreseeability of the defendant's products being sold in Virginia and its maintenance of a website accessible to Virginia customers.  *Id* at 829-30.

[4] Furthermore, *Kernius* involved the application of Federal Circuit case law (although the court wrote in *dicta* that its reasoning would apply under the Fourth Circuit standard as well), and is therefore distinguishable from the instant case.  *See Kernius*, 433 F.Supp.2d at 625 n. 2.

## IV.      CONCLUSION

Accordingly, an order shall issue HOLDING IN ABEYANCE Defendant's Motion to Dismiss (ECF No. 47) and scheduling an evidentiary hearing on the issue of Defendant's contacts with this forum.

Dated this 19th day of October, 2011

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge